UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| JASON LEE FISHER, | ) | |
| --- | --- | --- |
| | ) | Case No. 2:16-cv-334 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Clifton L. Corker |
| RANDY LEE, Warden, | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION

Petitioner Jason Lee Fisher is a Tennessee inmate proceeding *pro se* on a federal habeas petition pursuant to 28 U.S.C. § 2254. Having considered the submissions of the parties, the state-court record, and the law applicable to Fisher's claims, the Court finds that the petition should be denied.

I.  SUMMARY OF EVIDENCE AND PROCEDURAL HISTORY

Four separate homes located less than a quarter mile apart on Woodbridge Drive in Marshall County, Tennessee, were burglarized between September 26 and October 2, 2011. (Doc. 10-3, at 82–84, 94.) As a result of their investigation of the crimes, police officers determined that the burglar most likely lived in the neighborhood. (*Id*. at 93, 195–96.) On October 3, 2011, Detective Jimmy Oliver, a detective with the Marshall County Sheriff's Department, along with Captain Bob Johnson, were leaving the home of one of the burglary victims when they noticed Fisher driving a car without tags. (*Id*. at 96–102.) Detective Oliver initiated a stop based on the missing tags and spoke with Fisher, who did not have a valid driver's license. (*Id*. at 102–03.) Fisher was arrested, and the officers performed an inventory

search of Fisher's car, where they found a camera later identified by one of the burglary victims as the one stolen from her home. (*Id*. at 104–08.)

Fisher, who sometimes stayed on Woodbridge Drive in his mother's home, became a suspect in the burglaries. (*See* Doc. 10-3, at 115.) Officers went to Fisher's residence, where his mother gave consent for a search of her home. (*Id*.) During that search, officers found items from each of the four burglarized homes. (*Id*. at 115–17.)

On September 13, 2012, a Marshall County Criminal Court jury convicted Fisher of four counts of aggravated burglary, three counts of theft of property valued at more than $1,000 but less than $10,000, one count of theft of property valued at more than $500 but less than $1,000, and three counts of vandalism valued at $500 or less. (Doc. 10-1, at 76–90.) Fisher was sentenced as a career offender to an effective sentence of 45 years in prison. *State v. Fisher*, No. M2013-0220-CCA-R3-CD, 2013 WL 5827652, at *1 (Tenn. Crim. App. Oct. 29, 2013) ("*Fisher I*"). The Tennessee Court of Criminal Appeals ("TCCA") affirmed Fisher's convictions and sentence on October 29, 2013. *Id*. Fisher did not file an application for permission to appeal with the Tennessee Supreme Court.

On February 13, 2014, Fisher filed a pro se petition for post-conviction relief alleging counsel's ineffectiveness in failing to suppress the evidence seized from his vehicle. (Doc. 10-13, at 3–9, 20–21). On October 13, 2014, following an evidentiary hearing, the petition was denied by the post-conviction court. (*Id*. at 66–68.) Aggrieved, Fisher filed an appeal, arguing that his trial lawyers were deficient when they failed to file a motion to suppress the evidence found during the inventory search of his car. (Doc. 10-15, at 6.) In affirming the post-conviction court's denial of relief, the TCCA summarized the issues and evidence at the post-conviction hearing as follows:

> The Petitioner subsequently filed a Petition for Post–Conviction Relief alleging that he received ineffective assistance of counsel because trial counsel and co-counsel

2

failed "to competently argue to suppress evidence" found during the search of his car [FN2]. No amended petition was filed. At the post-conviction hearing, the Petitioner testified that he spoke with both trial counsel and co-counsel seven or eight times before trial. He stated that he did not feel good about their representation. The Petitioner explained that he had concerns about the search of his car because he never gave consent for Detective Oliver and Captain Johnson to search the trunk of the car. However, he never expressed those concerns to trial counsel or co-counsel because he "didn't know much about the law at the time or think even to question them...." On cross-examination, the Petitioner said he was standing outside of his car when the officers searched the trunk and that he was not given an option to leave. The Petitioner agreed that, at the time, he was under arrest. The Petitioner said he was not present when his car was towed. The Petitioner explained that he was concerned about the search because "[he] believe[d] they had no reason to go in the trunk. [He] was arrested for driving on suspended, not anything to do with the trunk of the vehicle."

> FN2 In his petition for post-conviction relief, the Petitioner also alleged that the search of his vehicle was not a valid search incident to arrest and that he received ineffective assistance of counsel when trial counsel and co-counsel did not file a motion to suppress the evidence found in the Petitioner's mother's house. However, the only issue raised on appeal is whether trial counsel and co-counsel were ineffective for failing to file a motion to suppress the evidence found during the inventory search of the Petitioner's car. We will review only the facts relevant to the issue presented on appeal. *See* Tenn. R. App. P. 13(b).

Trial counsel testified that he discussed the search of the car with the Petitioner. Trial counsel acknowledged that the Petitioner was not pulled over in connection with the burglaries and that he was not a suspect in the burglary investigation until officers searched his car. However, trial counsel did not file a motion to suppress the evidence found in the car. Trial counsel explained that the police arrested the Petitioner for driving on a suspended license and that there was no passenger in the Petitioner's car that could drive the car from the scene. Based on these facts, trial counsel concluded that the officers performed a valid inventory search before they towed the car. On cross-examination, trial counsel also stated that he did not know of any way that he could have suppressed the evidence. On re-direct examination, trial counsel said he did not know of any law that would prevent officers from searching a locked trunk during an inventory search. Trial counsel also stated that he did not know whether it was common practice for the police to offer an arrestee the opportunity to make arrangements for someone to pick up their vehicle before the police performed an inventory search and towed the vehicle.

Co-counsel testified that he spoke with the Petitioner about the stop of his vehicle and the search of his vehicle. Co-counsel explained that "[t]here was no non-frivolous way to try to suppress the stop." Co-counsel stated that the officers

conducted an inventory search, but he did not recall seeing the inventory sheet. However, even without seeing the inventory sheet, co-counsel concluded based on the preliminary hearing testimony and his conversations with Detective Oliver that the police had conducted an inventory search.

At the conclusion of the hearing, the Petitioner argued that the search of his vehicle was not a valid inventory search. The State argued that the Petitioner had not presented any proof to show that the inventory search was invalid. The post-conviction court noted that, had a motion to suppress been filed prior to trial, the State would have had to prove that the search of the vehicle fell within a valid exception to the warrant requirement. However, because this issue arose during post-conviction proceedings, the burden of proof "flip[ped]" to the Petitioner to show that the search was invalid.

In a written order, the post-conviction court accredited the testimony of trial counsel and co-counsel. Regarding the search of the vehicle, the post-conviction court found that the Petitioner had failed to show that there was a reasonable probability that a motion to suppress would have been granted. The post-conviction court noted that neither side presented proof as to the road conditions or whether the Petitioner knew of anyone who could readily move his vehicle to avoid towing. Accordingly, the post-conviction court denied relief, concluding that the Petitioner had failed to show that the search was not a valid inventory search and "it would be sheer speculation to find that there is a reasonable probability that a motion to suppress the search of the trunk would have prevailed." This timely appeal followed.

*Fisher v. State*, No. M2014-02327-CCA-R3-PC, 2015 WL 5766521, at *2–3 (Tenn. Crim. App. Oct. 2, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016) ("*Fisher II*"). The Tennessee Supreme Court denied Fisher's applications for permission to appeal on February 18, 2016. *Id.*

On or about October 28, 2016, Fisher filed the instant habeas petition raising the following grounds for relief, as paraphrased by the Court:

Ground One: Fisher's convictions are based on the use of evidence gained pursuant to an unconstitutional search and seizure in violation of the Fourth Amendment.

Ground Two: Fisher was denied effective assistance of trial counsel when counsel failed to completely argue to suppress evidence found during the search of the locked trunk of Fisher's car.

(Doc. 2.) Respondent filed an answer to the petition on May 17, 2017. (Doc. 11.) Fisher submitted a reply to the answer on July 31, 2017. (Doc. 13-1.)

4

## II.     STANDARD OF REVIEW

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1), (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id*. at 407–08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Williams*, 529 U.S. at 410–11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the

correctness of the State court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim).  A procedural default exists in two circumstances:  (1) where the petitioner fails to exhaust all of his available state remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that rule provides an independent and adequate basis for the dismissal.  *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731–32, 735 n.1 (1991).  A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice.  *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977).  "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the state's procedural rules, or that his trial counsel rendered ineffective assistance.  *See id*. at 753.  Additionally, the prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice.  *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimension") (emphasis in original).  A fundamental miscarriage of justice of

occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## III. DISCUSSION

### A. Fourth Amendment

#### i. *Procedural default*

In his first ground for habeas relief, Fisher argues that his convictions are based on the use of evidence gained pursuant to an unconstitutional search and seizure. (Doc. 2, at 12–14.) However, Fisher has only raised this issue in the State courts in the context of ineffective assistance of counsel, and, therefore, the substantive Fourth Amendment claim has not been presented in satisfaction of § 2254(b)'s exhaustion requirement. (Doc. 10-13, at 20–21, 66–68); *see* 28 U.S.C. §§ 2254(b), (c) (disallowing grant of writ of habeas corpus on behalf of a State prisoner unless, with certain exceptions, the prisoner has exhausted available State remedies by presenting to the State courts the same federal claim sought to be redressed in the habeas petition); *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971) (holding exhaustion requirement satisfied only if petitioner has "fairly presented" the "substance of [his] federal habeas corpus claim" to the State courts).

Fisher argues that this claim was presented to the State courts, and that "the confusion that [he] failed to exhaust claim one is due to [the fact that] his claims are interlocking," and that post-conviction counsel "merged the [two federal habeas] cl[ai]ms into a single argument." (Doc. 13-1, at 6.) However, as the TCCA noted, the federal claim presented to the trial court was counsel's effectiveness, which is a distinct inquiry from the substantive Fourth Amendment issue. *See Fisher II*, 2015 WL 5766521, at *2.

The Supreme Court has held that the "mere similarity of [State and Federal] claims" is insufficient for fair presentation. *Duncan v. Henry*, 513 U.S. 364, 366 (1995). Additionally,

7

general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation for exhaustion purposes. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). Rather, exhaustion requires that the same claim, under the same theory, be presented to the state courts for review. *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013) (citation omitted). Here, the underlying Fourth Amendment claim was not fairly presented to the State courts for review, and, therefore, the Court finds this claim is technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."); *see also* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period) and § 40-30-102(c) ("one petition" rule).

Although Fisher does not expressly argue cause and prejudice to excuse the default, the Court considers Fisher's arguably implied claim that post-conviction counsel is the cause of the default. However, with very limited exception not applicable here, a post-conviction attorney's ineffective assistance in post-conviction proceedings does not qualify as "cause" to excuse the procedural default of constitutional claims. *Coleman*, 501 U.S. at 755; *cf. Martinez v. Ryan*, 566 U.S. 1, 17 (2012) (holding "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective"). Therefore, Fisher has not provided grounds to excuse the procedural default of his first claim, and it must be dismissed.

    *ii.*  *Merits*

Out of an abundance of caution, the Court considers the merits of Fisher's claim under the Fourth Amendment, which protects "persons, houses, papers, and effects, against

8

unreasonable searches and seizures[.]" U.S. Const. amend. IV. Warrantless searches are presumptively unreasonable, and evidence discovered as a result is subject to suppression unless an exception to the warrant requirement is applicable. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971); *Katz v. United States*, 389 U.S. 347, 357 (1967). Regulated inventory searches, which allow officers to inventory the contents of a lawfully impounded vehicle, are one such exception. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (holding "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment"); *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 811 n. 1 (1996) (citation omitted). Thus, such searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372.

Whether such a search is constitutionally permissible depends on its reasonableness in light of the facts and particular circumstances of the case. *Opperman*, 428 U.S. at 375; *Bertine*, 479 U.S. at 375. An inventory search is considered "reasonable" under the Fourth Amendment provided there is no showing that the police acted in bad faith or for the sole purpose of an investigation, and the officers performed the search in accordance with standard procedures. *See Florida v. Wells*, 495 U.S. 1, 4 (1990) (holding inventory search may not be used as "a ruse for a general rummaging in order to discover incriminating evidence"); *Bertine*, 479 U.S. at 372–73; U.*S. v. Hockenberry*, 730 F.3d 645, 658–59 (6th Cir. 2013).

Here, officers stopped Fisher because he did not have a tag on his vehicle, and he was arrested when it was discovered he did not have a valid driver's license. He was alone in the

9

vehicle at the time of his arrest, and, even if someone else had been present, officers were not required to let that individual drive a tagless vehicle in violation of the law. Therefore, it is reasonable for officers to have towed the vehicle and to have performed an inventory search of the vehicle prior to doing so. There is no evidence that the police acted in bad faith or solely for investigative purposes in conducting the inventory search, and therefore, Fisher has not demonstrated that the search of the vehicle violated the Fourth Amendment. *Bertine*, 479 U.S. at 372–73.

### B. Ineffective assistance of counsel

In his second ground for relief, Fisher argues that his counsel rendered ineffective assistance in failing to competently argue to suppress evidence found during the search of the locked trunk of his car. (Doc. 2, at 15–19.)

#### i. *Standard of Law*

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance fell below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687–88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the state court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

      *ii.*     *Analysis*

In considering this claim on appeal from the denial of post-conviction relief, the TCCA noted that inventory searches of a vehicle are subject to the following guidelines under Tennessee law:

> [I]f the circumstances ... are such that the driver, even though arrested, is able to make his or her own arrangements for the custody of the vehicle, or if the vehicle can be parked and locked without obstructing traffic or endangering the public, the police should permit the action to be taken rather than impound the car against the will of the driver and then search it. Just cause to arrest the driver is not, alone, enough; there must also be reasonable cause to take his vehicle into custody.

*Fisher II*, 2015 WL 5766521, at *4 (citing *Drinkard v. State*, 584 S.W. 650, 653 (Tenn. 1979))[1]. The court noted that the burden was not on the State to show that the inventory search complied with *Drinkard*'s guidelines, as would have been the case if trial counsel had filed a motion to suppress the evidence from the vehicle, but rather, at the post-conviction phase, the burden was on Fisher to demonstrate that he was prejudiced by counsel's alleged deficiency. *Id*. at *5. That is, Fisher bore the burden, by clear and convincing evidence, to show that a motion to suppress would have been granted, and that a there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. *Id*. (citations omitted). The TCCA stated that, to sustain his burden, Fisher essentially had to incorporate a motion to suppress into the post-conviction hearing to establish the possible merit of a suppression motion. *Id*. (citation omitted).

The court found that Fisher failed to present proof to establish that a motion to suppress would have been successful, as even though the police called a tow truck before Fisher was taken from the scene, there was no indication whether officers told him his car would be towed unless he could provide a reasonable alternative, whether he could have provided a reasonable alternative, or whether it could have been safely parked nearby. *Id*. at *6. The TCCA further found that Fisher failed to present witnesses, such as the arresting officers, to establish the factual circumstances of Fisher's arrest and the subsequent inventory search of his vehicle. *Id*. Absent such evidence, the TCCA noted, Fisher could not establish the success of a suppression

---

[1] The Court notes that the Sixth Circuit has held that "[t]he federal constitutional basis of *Drinkard* has been overruled. In the absence of a showing that police acted in bad faith or for the sole purpose of investigation, evidence discovered during the investigatory search of arrestee's car is admissible." *United States v. Vite-Espinoza*, 342 F.3d 462, 470 (6th Cir. 2003) (citing *Bertine*, 479 U.S. at 372–73).

motion, and accordingly, could not demonstrate he was prejudiced by trial counsel's failure to file a motion to suppress the evidence found in the vehicle. *Id*.

This Court's review of the record supports the determination that the proof presented by Fisher during post-conviction proceedings failed to establish the success of a suppression motion based on the inventory search of his vehicle, and therefore, the Court finds that Fisher has failed to "demonstrate that it was necessarily unreasonable" to reject Fisher's *Strickland* claim. *See Pinholster*, 563 U.S. at 190. Accordingly, the Court finds that the rejection of this claim is neither contrary to nor an unreasonable application of *Strickland* and its progeny, and relief on this claim will be denied.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

## V. CONCLUSION

Jason Lee Fisher has failed to demonstrate an entitlement to federal habeas relief. Therefore, his petition for a writ of habeas corpus will be **DENIED**, and this action will be

13

**DISMISSED WITH PREJUDICE**.  A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Fed. R. App. P. 24.

**AN APPROPRIATE ORDER WILL ENTER.**

<u>*/s/ Travis R. McDonough*</u>
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**